United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Grupo Unidos Por El Canal, S.A. and Sacyr, S.A., Petitioners, ) ) ) | |
| v. ) | Civil Action No. 17-23996-Civ-Scola |
| ) | |
| Autoridad del Canal de Panama, Defendant. ) ) | |

### Omnibus Order on Motion to Vacate, Motion to Dismiss, and Motion to Confirm Arbitral Award[1]

This matter is before the Court upon multiple motions filed by the parties in this case. The Petitioners Grupo Unidos Por El Canal, S.A. ("GUPC") and Sacyr, S.A. initiated this action requesting that the Court vacate a final arbitral award. Thereafter, the Petitioners filed an amended motion to vacate (ECF No. 15), which the Respondent Autoridad del Canal de Panama ("ACP") seeks to dismiss (ECF No. 43), and opposes in substance (ECF No. 44). The Respondent ACP also filed a motion to confirm the arbitration award (ECF No. 50). For the reasons set forth below, the Court finds that the Petitioners' motion to vacate is time-barred, and that ACP's motion to confirm should be granted in part.

### 1. Background

This case arises as a result of a dispute related to the design and construction of the third set of locks on the Pacific and Atlantic sides of the Panama Canal. The Petitioner GUPC is the contractor that designed and built the third set of locks, and the Petitioner Sacyr is one of GUPC's shareholders. The Respondent ACP is an entity established by the Panamanian constitution to operate, manage, and preserve the Panama Canal. The underlying dispute involved significant time delays and cost overruns of almost $200 million on the Pacific side of the project, related to the design and construction of a cofferdam, which would allow a dry work area, and a diversion of the nearby Cocoli River. According to the Petitioners, the delay and increased costs occurred due to unexpected site conditions because of extensive prior dredging in the area, which ACP knew about, yet failed to disclose. As set forth in the

---

[1] Although the parties' filings relating to these motions were filed under seal based upon their claims that the filings contained confidential information, there is no confidential information discussed in this order. Thus, the Order is not being filed under seal.

parties' agreement, the dispute was arbitrated in Miami pursuant to the Rules of Arbitration of the International Chamber of Commerce ("ICC"). Ultimately, the arbitration resulted in an award in favor of ACP, ordering the Petitioners (and additional claimants not parties to the instant case) to reimburse ACP for significant legal, administrative, and other costs, for a total of over $22 million. The Petitioners now request that the Court vacate the award pursuant to 9 U.S.C. section 10(a)(3), arguing that the arbitration tribunal majority refused to consider relevant and necessary evidence as a result of ACP's repeated failure to produce pertinent documentation and witnesses. ACP argues that the Petitioners' motion to vacate is barred because they failed to timely serve notice as required by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 12, and the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1608. In addition, ACP requests that this Court confirm the underlying arbitration award.

## 2. Legal Standard

It is "well settled that judicial review of an arbitration award is narrowly limited." *Davis v. Prudential Sec., Inc.,* 59 F.3d 1186, 1190 (11th Cir. 1995). In fact, such review is "among the narrowest known to the law." *AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc.,* 508 F.3d 995, 1001 (11th Cir. 2007) (citation and quotation marks omitted). As long as an arbitrator is even arguably construing the issues before him based on the parties' agreement, and acting within the scope of his authority, "that a court is convinced he committed serious error does not suffice to overturn his position." *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 38 (1987). In short, "it is only when an arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice that his decision may be unenforceable." *White Springs Agric. Chems., Inc. v. Glawson Invs. Corp.,* 660 F.3d 1277, 1281 (11th Cir. 2011) (alterations omitted) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,* 559 U.S. 662, 671 (2010)). The Federal Arbitration Act "imposes a heavy presumption in favor of confirming arbitration awards and federal courts should defer to an arbitrator's decision whenever possible." *Pochat v. Lynch*, No. 12-22397-CIV, 2013 WL 4496548, at *5 (S.D. Fla. Aug. 22, 2013) (Rosenbuam, J.) (quoting *Riccard v. Prudential Ins. Co. of Am.,* 307 F.3d 1277, 1288 (11th Cir. 2002) and *Frazier v. CitiFinancial Corp., LLC,* 604 F.3d 1313, 1321 (11th Cir. 2010)) (quotation marks omitted). Ultimately, "a court's confirmation of an arbitration award is usually routine or summary." *Riccard*, 307 F.3d at 1288.

## 3. Analysis

At the outset, the Court notes that although the Federal Rules of Civil Procedure apply to actions relating to arbitration, the FAA does not provide a

procedural mechanism for dismissal of an action, such as Rule 12 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 81(6)(B) (stating that "[t]hese rules, to the extent applicable, govern proceedings under [9 U.S.C., relating to arbitration], except as these laws provide other procedures"). Rather, the proper procedure for seeking review of an arbitration award is to file a motion, to which the respondent would present its defenses in a response. *See O.R. Secs., Inc. v. Prof'l Planning Assocs., Inc.*, 857 F.2d 742, 745-46 (11th Cir. 1988) (setting out the proper procedure for seeking to vacate an arbitration award). Indeed, "[t]he manner in which an action to vacate an arbitration award is made is obviously important, for the nature of the proceeding affects the burdens of the various parties as well as the rule of decision to be applied by the district court." *Id.* at 745. In the instant case, ACP filed both a motion to dismiss pursuant to Rule 12(b)(5) based upon the failure to timely serve notice under the FAA, and a substantive response to the Petitioners' motion to vacate. In the context of this proceeding, however, ACP's motion to dismiss is better construed as an additional substantive argument in response to the Petitioners' motion to vacate. *See id.* at 746 (construing a Rule 12(b)(6) motion as a response to a motion to vacate); *see also Belz v. Morgan Stanley Smith Barney, LLC*, No. 3:13-cv-636-J-34MCR, 2014 WL 897048, at *3 (M.D. Fla. Mar. 5, 2014) (same) (citing additional cases). The Court thus considers the instant motions through this lens.

### A. The motion to vacate is time-barred

The parties agree that the motion to vacate is governed by the FAA. According to the FAA, "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12. The parties also agree that ACP is an "instrumentality of a foreign state" within the meaning of the FSIA. The Federal Rules of Civil Procedure provide that "[a] foreign state or its political subdivision, agency, or instrumentality must be served in accordance with 28 U.S.C. § 1608." Fed. R. Civ. P. 4(j)(1). ACP argues that the Petitioners failed to serve notice of the petition in accordance with 28 U.S.C. § 1608(b)(1). The Petitioners contend that they delivered notice in compliance with the "special arrangement for service" under the FSIA, that there was substantial compliance because ACP had actual notice of the petition, and that, in any event, they should have an opportunity to cure, if the Court finds that service was not sufficient. The Court considers each argument in turn.

The relevant portion of the FSIA states that "[s]ervice in the courts of the United States and of the States shall be made upon an agency or instrumentality of a foreign state by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the

plaintiff and the agency or instrumentality." 28 U.S.C. § 1608(b)(1). The Respondents contend that no special arrangement for service exists in this case, and that the Petitioners' emailed petition to ACP's arbitration counsel, electronic submission and delivery in hard copy to ACP's arbitration counsel and ACP via courier does not constitute valid service.

In response, the Petitioners rely upon language from the parties' Conditions of Contract (ECF No. 47-7) and the Terms of Reference of the Arbitration (ECF No. 47-4) to demonstrate the existence of a "special arrangement for service" between them. According to the Terms of Reference,

> All written notifications and communications arising in the course of this arbitration shall be deemed to have been validly made to each Party where they have been transmitted to [ACP's arbitration counsel].
>
> . . .
>
> All written communications of less than twenty pages shall be sent by email (eventually confirmed by fax or courier service) and all written communications of twenty or more pages, including formal submissions and all attachments, shall be sent by email and hand delivery/courier service.

(ECF No. 47-4 at ¶¶ 8-9.) In addition, the Conditions of Contract specify that "[w]herever the Contract provides for the giving or issuing of approvals, certificates, consents, determinations, notices and requests, these communications and all other written communications during the Contract shall be transmitted via the DTCS [Document Tracking and Control System]." (ECF No. 47-7 at § 1.3.)

Upon review, this language is not sufficient to constitute a special arrangement for service under the FSIA. Nowhere does the language relied upon by the Petitioners refer to notices with respect to events occurring outside the arbitration or the confines of the contract between the parties. Indeed, in the cases relied upon by the Petitioners finding contractual language sufficient to create a special arrangement for service, the contract language either specifically encompassed court proceedings or was broad enough to be all-encompassing. *See In re Arbitration between Trans Chem. Ltd. & China Nat'l Machinery Import & Export Corp.*, 978 F. Supp. 266, 299 (S.D. Tex. 1997) (where agreement stated "[e]ach party shall be deemed to have consented that any papers, notices, or process necessary or proper for the initiation or continuation of an arbitration under these rules; for any court action in connection therewith; or for the entry of judgment on any award made . . ."");

*Arbitration between Space Systems/Loral, Inc. v. Yuzhnoye Design Office*, 164 F. Supp. 2d 397, 402 (S.D.N.Y. 2001) (the contract broadly covered "[a]ll notices and communications between the parties," and the conclusion that a special arrangement existed was "supported by the fact that the LSA [Launch Service Agreement] plainly provided for the arbitration of disputes and for a court proceeding to enforce the arbitration award."); *G.E. Transp. S.P.A. v. Republic of Albania*, 693 F. Supp. 2d 132, 136-137 (D.D.C. 2010) (finding a special arrangement for service where the contract provided that "any notice to be given to Albania shall be in writing . . . .") (internal alterations omitted and emphasis added).

In contrast, the contractual language in the present case expressly cabins the communications to the arbitration or contract – "[a]ll written notifications and communications *arising in the course of this arbitration*" and "[w]herever *the Contract provides* for the giving or issuing of . . . notices." (ECF No. 47-4 at ¶ 8; ECF No. 47-7 at § 1.3) (emphasis added). This litigation cannot be viewed as arising in the course of the arbitration, and although the contract expressly permits challenges to the arbitration award, it does not provide for the giving or issuing of notices in connection with any such challenge. (*See* ECF No. 47-2 at § 20.10 ("any such Party so complying may subsequently challenge or otherwise appeal or dispute such award in any court of competent jurisdiction."). Therefore, no special arrangement for service exists in the present case.

The Petitioners next argue that service by "special arrangement" was the only way under the FSIA that they could reasonably have given ACP notice of the motion to vacate within the FAA's three-month limitations period; however, the Petitioners did not attempt any other available means pursuant to the FSIA.

In addition to service by special arrangement, the FSIA provides that "if no special arrangement exists, [service shall be made] by delivery of a copy of the summons and complaint either to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive process in the United States; or in accordance with an applicable international convention on service of judicial documents[.]" 28 U.S.C. § 1608(b)(2). The Respondent expressly denies that its counsel was authorized to accept service of process of the motion to vacate. The Petitioners contend that ACP had empowered its arbitration counsel to receive service through its acceptance of the Terms of Reference of the arbitration and therefore that e-mail and hard copy courier delivery was sufficient; however, as the Court has already determined, the Terms of Reference do not apply outside the context of the arbitration. Therefore, the Petitioners fail to establish that ACP's arbitration counsel was

authorized, which is their burden. *Reeves v. Wilbanks*, 542 F. App'x 742, 746 (11th Cir. 2013) (citing *Aetna Bus. Credit, Inc. v. Universal Decor & Interior Design, Inc.*, 635 F.2d 434, 435 (5th Cir. 1981)).

The Petitioners further maintain that service by special arrangement was the only means of service because three months was insufficient time in which to review the award, draft the motion to vacate, obtain translations of the documents, and attempt to serve ACP via letters rogatory. While this may be true, the Petitioners appear to ignore the remainder of the FSIA, which provides that

> if service cannot be made under paragraphs (1) or (2), and if reasonably calculated to give actual notice, [service may be made] by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state—
>
> (B) by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served, or
>
> (C) as directed by order of the court consistent with the law of the place where service is to be made.

28 U.S.C. § 1608(b). If indeed it was impossible to serve ACP under subsections (1) and (2) of the FSIA, the Petitioners had at least two other ways in which to accomplish valid service—of which they failed to avail themselves.

The Petitioners next argue that they substantially complied with the requirements of the FSIA and that ACP had actual notice of the proceedings, and therefore cannot show that it has suffered any prejudice. However, as the parties acknowledge, the three-month timeframe in the FAA is a limitations period; thus, ACP need not demonstrate prejudice—if the Petitioners did not accomplish proper timely service, their motion to vacate is time-barred. Thus, the Petitioner's reliance on *Harris Corp. v. Nat'l Iranian Radio & Television*, 691 F.2d 1344, 1352 (11th Cir. 1982), is misplaced because it did not involve a motion to vacate an arbitration award. While the court in *Harris* found that service was sufficient under the FSIA despite technical deficiencies because the defendant had actual notice, the court also noted the efforts that the plaintiff undertook to comply with the FSIA—transmitting the documents by telex, sending the documents both in English and Farsi by registered mail through the Office of Consular Service, and by delivering copies to the firm coordinating litigation on behalf Iran. *Harris Corp.*, 691 F.2d at 1352 n.15. The Petitioners here did not attempt to serve notice by any means other than relying upon the

existence of a special arrangement. In any event, the Petitioners fail to point to any authority to support the notion that an equitable exception to the notice requirement under the FAA exists. Indeed, courts have found the opposite. *See Belz*, 2014 WL 897048, at *7 (questioning the existence of an equitable exception to the FAA's limitations period and noting that actual notice does not cure defective service) (citing additional cases); *see also Cullen v. Paine, Webber, Jackson & Curtis, Inc.*, 863 F.2d 851, 855 (11th Cir. 1989) (where the appellant argued that ongoing settlement negotiations constituted due diligence for which an exception to section 12 should exist, the court "need consider neither the contours nor the existence of such an exception, for, even if an exception might be proper in some circumstances, Cullen has alleged insufficient facts to demonstrate that he was prevented by the pendency of negotiations from filing a timely section 10 motion[.]"); *Mitra v. Glob. Fin. Corp.*, No. 08-80914-CIV, 2009 WL 1833932, at *3 (S.D. Fla. June 25, 2009) (Marra, J.) (recognizing that the Eleventh Circuit "has declined to fashion a due diligence exception to the language in section 12 of the FAA," and declining to create one). Thus, actual notice of a motion to vacate does not translate to proper service under the FAA and FSIA in this case.

For the same reasons, the Petitioners are not entitled to cure the deficiencies in their attempts to serve notice upon ACP. The three-month window for service under the FAA has long passed, and the Petitioners provide no authority to support the notion that this Court may extend the statutory deadline for service. *See Argentine Republic v. Nat'l Grid Plc*, 637 F.3d 365, 368 (D.C. Cir. 2011) ("[w]here Congress has set out a specific deadline that courts have consistently construed to prohibit extension on equitable grounds, we think that it would be incongruous to allow courts to circumvent the congressional directive through the use of Rule 6(b).").

As a result, the Petitioners have failed to effectuate timely service of notice upon ACP, their motion to vacate is time-barred, and therefore, denied.

### B. ACP is entitled to confirmation of the arbitration award

As a threshold matter, the parties disagree whether the New York Convention or Chapter 1 of the FAA properly applies to ACP's request for confirmation.[2] Awards subject to the New York Convention include awards

---

[2] The Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 (effective for the United States on Dec. 29, 1970) [hereinafter New York Convention or Convention], is a multi-lateral treaty that requires courts of a nation state to give effect to private agreements to arbitrate and to enforce arbitration awards made in other contracting states." *Thomas v. Carnival Corp.*, 573 F.3d 1113,

"involving parties domiciled or having their principal place of business outside the enforcing jurisdiction." *Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1441 (11th Cir. 1998). In the instant case, although the arbitration took place in Miami, Florida, both the Petitioners and the Respondent are parties domiciled and with principal places of business outside the United States. As a result, the New York Convention applies.[3]

The New York Convention provides that "[t]he court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207. The grounds for refusal of recognition under the New York Convention differ from the grounds for vacatur under Chapter 1 of the FAA. *See* 9 U.S.C. § 10. Article V of the New York Convention sets forth the grounds for refusal of recognition, including the following, which are the grounds upon which the Petitioners rely in arguing that the award should not be confirmed:

> The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; [or]

> The recognition or enforcement of the award would be contrary to the public policy of that country.

New York Convention, art. V, 1.(b) and 2.(b). In comparison, the Petitioners request vacatur under Chapter 1, which states that a court may enter an order vacating an arbitration award

---

1116 (11th Cir. 2009) *overruled on other grounds by Lindo v. NCL (Bah.), Ltd.*, 652 F.3d 1257, 1277-78 (11th Cir. 2011). "The United States, as a signatory to the Convention, enforces this treaty through Chapter 2 of the U.S. Federal Arbitration Act, which incorporates the terms of the Convention." *Id.* (citing 9 U.S.C. §§ 205, 206).

[3] As an aside, the Court notes that although the Petitioners challenge the application of Chapter 1 of the FAA to ACP's request for confirmation, the Petitioners sought to vacate the arbitration award pursuant to Chapter 1. In fact, in a case in which the Convention applies, the only basis to vacate is upon a showing that one of the grounds for refusal under the Convention applies. *See Indus. Risk Insurers*, 141 F.3d at 1441. Thus, the Petitioners' reliance on Chapter 1 in the motion to vacate is questionable. Even so, the Convention makes clear that Chapter 1 applies to proceedings under the Convention, to the extent that the provisions of Chapter 1 do not conflict with Chapter 2 of the FAA. *See* 9 U.S.C. § 208.

where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced[.]

9 U.S.C. § 10(a)(3). Notwithstanding the differences, significantly in this case, the Petitioners make the same arguments in opposition to ACP's motion to confirm as they did in their motion to vacate, and which the Court has already found to be time-barred.

"[T]he failure of a party to move to vacate an arbitral award within the three-month limitations period prescribed by section 12 of the United States Arbitration Act bars him from raising the alleged invalidity of the award as a defense in opposition to a motion brought under section 9 of the [FAA] to confirm the award." *Cullen*, 863 F.2d at 854. Thus, the Petitioners' arguments in opposition to ACP's motion to confirm are improper.

In order to avoid the application of this rule, the Petitioners first argue that Chapter 1 of the FAA does not apply to ACP's request for confirmation, and they emphasize that a vacatur action is inherently distinct from a confirmation proceeding. However, as the Court has already noted, Chapter 1 of the FAA applies to New York Convention proceedings through the residual clause to the extent that the two do not conflict. *See also Gonsalvez v. Celebrity Cruises, Inc.*, 750 F3d 1195, 1197 (11th Cir. 2013) (finding that the FAA's three-month limitations period applies to vacatur actions under the New York Convention). Indeed, given the application of the three-month limitation period to New York Convention proceedings, drawing a distinction as the Petitioners suggest would be illogical, as it would allow a party barred from seeking vacatur to back-door the very same barred arguments in opposition to a motion to confirm, essentially providing the party two bites at the apple. Moreover, the Petitioners do not contend that there is any conflict between Chapter 1 of the FAA and the Convention that would prevent the Court from applying the rule in *Cullen* to this case. In fact, this Court already has not hesitated to do so. *See Inversiones y Procesadora Tropical INPROTSA, S.A. v. Del Monte Int'l GMBH*, No. 16-24275-CIV-MORENO, 2017 WL 1737648, at *7 (S.D. Fla. May 1, 2017) (Moreno, J.) (finding that a party who failed to timely effect service was barred from raising affirmative defenses to a cross-motion for confirmation, where Convention applied). As a result, the Petitioners are barred from raising defenses to ACP's motion to confirm.

In order to obtain recognition of an arbitral award under the New York Convention, ACP must supply "[t]he duly authenticated original award or a duly certified copy thereof; [and t]he original [arbitration] agreement [ ] or a duly certified copy thereof." New York Convention, art. IV, 1. Attached to its motion, ACP has provided certified copies of the award, and copies of the contract documents containing the parties' agreement to arbitrate. (ECF No. 50-1, Exhs. A-C.) An arbitration award "must be confirmed unless [the Petitioners] can successfully assert one of the seven defenses against enforcement of the award enumerated in Article V of the New York Convention." *Indus. Risk Insurers*, 141 F.3d at 1441. "When reviewing an arbitration award, confirmation under the Convention is a summary proceeding in nature, which is not intended to involve complex factual determinations, other than a determination of the limited statutory conditions for confirmations or grounds for refusal to confirm." *Chelsea Football Club Ltd. v. Mutu*, 849 F. Supp. 2d 1341, 1344 (S.D. Fla. 2012) (Moreno, J.) (internal quotations and citation omitted). As the Court has already determined, the Petitioners are barred from raising their arguments in response to ACP's motion. In any event, "an arbitrator's result may be wrong; it may appear unsupported; it may appear poorly reasoned; it may appear foolish. Yet, it may not be subject to court interference." *Id.* (quoting *Delta Air Lines v. Air Line Pilots Ass'n, Int'l*, 861 F.2d 665, 670 (11th Cir. 1988)). Therefore, upon review, ACP's request for confirmation of the award is due to be granted.

Finally, the Petitioners oppose ACP's request for prejudgment interest on the award, arguing that it would be inconsistent with the arbitral tribunal's decision. In general, "absent any reason to the contrary, [prejudgment interest] should normally be awarded when damages have been liquidated by an international arbitral award." *Indus. Risk Insurers*, 141 F.3d at 1447. ACP argues that the arbitral tribunal did not decide the issue of post-award prejudgment interest; rather, in the award, the tribunal determined that ACP was not entitled to pre-award interest, and thus rejected the request for it. *See* ECF No. 50-1 at 181 ¶ 728, ¶ 772v.

In response, the Petitioners point to paragraph 732 of the award as evidence that the arbitral tribunal rejected ACP's request for any interest, including post-award interest. Upon review, the Court agrees with the Petitioners. After rejecting ACP's request for pre-award interest, the arbitral tribunal, in setting forth its decision and award on legal and other costs, refers specifically to an "award of sum" and states explicitly that

> [c]oncerning interest on costs, the Tribunal considers that Respondent has not supplied any details

concerning the time when the various costs have been incurred nor as to the rate which might be reasonable to apply. The Respondent has also not made any submission as to whether in Panama, any award of sum would – or would not – automatically generate interest and at which rate.

*Id.* at 182, ¶ 732. Thus, the Respondent's request for post-award prejudgment interest is denied.

### 4. Conclusion

Accordingly, the Petitioners' amended motion to vacate (**ECF No. 15**) is **denied**. Because the Court construed ACP's motion to dismiss as an additional argument in response to the motion to vacate, the motion to dismiss (**ECF No. 43**) is **denied as moot**. In addition, ACP's motion to confirm (**ECF No. 50**) is **granted in part**. ACP is entitled to confirmation of the award, but not prejudgment interest. ACP shall submit its proposed judgment to the Court in Word format for entry, consistent with this Order. The Clerk of Court is directed to **close** this case; however, the Clerk shall not terminate (ECF No. 42), which the Court referred to Judge Torres for disposition (*see* ECF No. 55), and which remains pending.

**Done and ordered** at Miami, Florida, on June 18, 2018.

Robert N. Scola, Jr.
United States District Judge