**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 17-23996-CV-SCOLA/TORRES

GRUPO UNIDOS POR EL CANAL, S.A.,
and SACYR, S.A.,

       Petitioners,

v.

AUTORIDAD DEL CANAL DE PANAMA,

       Defendants.
_____/

**ORDER ON PETITIONERS'**
**MOTION TO SEAL CERTAIN EXHIBITS AND DOCUMENTS**

This matter is before the Court on a Motion to Seal certain exhibits filed by Plaintiff GRUPO UNIDOS POR EL CANAL, S.A. and Sacyr, S.A. ("Petitioners") on January 26, 2018. [D.E. 42]. Defendant AUTORIDAD DEL CANAL DE PANAMA ("Respondent") responded in opposition under seal on February 9, 2018 [D.E. 46], and Petitioners' Reply followed on February 16, 2018. [D.E. 48]. Following our review of the parties' briefing materials, the record before us and the relevant authorities governing the dispute, it is hereby **ORDERED** that the Motion be **DENIED**.

### *I.* *BACKGROUND*

This matter relates to various construction projects associated with the recent modernization of the Panama Canal. Petitioners are contractors that designed and built a set of locks during that project. Respondent is an entity established by the

Panamanian constitution that tasks it with operating, managing, maintaining and preserving the Canal. The underlying suit was initiated in this Court to challenge an arbitral award that found Petitioners responsible for delays and cost overruns associated with the project. Judge Scola denied the request to vacate the award on June 19, 2018, finding the petition time-barred and determining that Respondent was entitled to confirmation of the arbitral award. [D.E. 56].

Prior to that decision, Petitioners sought to seal the Amended Petition to Vacate and all exhibits attached thereto. [D.E. 13]. Judge Scola granted that Motion in part, holding that the Petition and exhibits would remain under seal for sixty (60) days and requiring the parties to "confer and identify specific documents [both] believe should remain under seal." [D.E. 20]. Petitioners filed a Motion to Seal Confidential Documents on January 26, 2018 [D.E. 42], claiming that both parties could not agree about whether to seal certain documents per Judge Scola's Order. *Id*. Respondent opposes the sealing of these items. Judge Scola referred the matter to the undersigned on June 8, 2018, and it is now ripe for disposition.

Petitioners ask this Court to seal the following two categories of documents: (1) information related to the "program management database" it uses to maintain costs, accounting, and financial information; and (2) portions of the record pertaining to the amounts in dispute and the legal fees incurred in the underlying arbitration. [D.E. 42].[1] As for the management database, Petitioners argue that the information

---

[1]     Specifically, Petitioners ask this Court to seal the following: (1) D.E. 1, ¶¶ 20, 22 and 35; (2) Exhibit A to D.E. 1, ¶ 19; (3) D.E. 15, ¶¶ 20, 22 and 35; (4) Exhibit A to D.E. 15 (the amended "Bouchardie Declaration"), ¶ 19; (5) certain pages and

2

contained in the exhibits at issue include "proprietary trade secret information … sensitive cost calculations, and financial information relating to the Third Set of Locks for the Panama Canal." *Id*. As to the second category of documents, Petitioners contend that information related to the total amount in dispute and the "publication of [the] parties' differing positions on this point" could lead to "further aggravation of the pending disputes given that Respondent has already sought to tout its own cost estimates in the press for strategic effect." *Id*. Respondent opposes the sealing of either category of documents, claiming that the documents should be made public because it "has broad transparency obligations" that require it to make public the information contained therein. [D.E. 46].

## II.  ANALYSIS

"The operations of the courts and the judicial conduct of judges are matters of utmost public concern." *Landmark Communications, Inc. v. Virginia*, 435 U.S. 829, 839 (1978). "The common-law right of access to judicial proceedings, an essential component of our system of justice, is instrumental in securing the integrity of the process." *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001). This right "includes the right to inspect and copy public records and documents." *Id*. (citation omitted). However, the right of access is not absolute and "may be overcome by a showing of good cause." *Romero v. Drummond Co.*, 480 F.3d 1234, 1245 (11th Cir. 2007).

---

paragraphs referenced in Exhibits 1, 2, 15, 25, 29, 32, 33, and 47 of the Bouchardie Declaration. [D.E. 42, pp. 2-4]. In total, Petitioners assert that the items to be seal "equate to portions of just 83 of the 1,619 pages filed with the Petition." *Id.*, p. 1.

3

A finding of good cause requires "balanc[ing] the asserted right of access against the other party's interest in keeping the information confidential." *Chicago Tribune*, 263 F.3d at 1309. "[W]hether good cause exists…is…decided by the nature and character of the information in question." *Id.* at 1315. "In balancing the public interest in accessing court documents against a party's interest in keeping the information confidential, courts consider, among other factors, whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials of public concerns, and the availability of a less onerous alternative to sealing the documents." *Romero*, 480 F.3d at 1246.

Respondent argues that before we look to this "six-factor balancing test," we must first determine whether Petitioners have met a two-prong "compelling interest" test. *See* D.E. 46, p. 4-5, citing to *Rudd Equip. Co., Inc. v. John Deere Const. & Forestry Co.*, 834 F.3d 589, 593-94 (6th Cir. 2016) (finding that shielding material in court records, as opposed to shielding proprietary information while the parties trade discovery, should be done "only if there is a compelling reason why certain documents or portions thereof should be sealed.") (internal citations omitted). This is not the law of this Circuit. As the Court made clear in the *Chicago Tribune* decision, the Eleventh Circuit only requires the "compelling interest" standard to be used when the request is for the entire record to be sealed or in the case of a criminal trial:

> The media and general public's First Amendment right of access to criminal trial proceedings has been firmly established…For a court to

4

> exclude the press and public from a criminal proceeding, it must be shown that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest.
>
> The constitutional right of access has a more limited application in the civil context than it does the criminal. Nonetheless, this court has extended the scope of the constitutional right of access to include civil actions pertaining to the release or incarceration of prisoners and their confinement. Materials merely gathered as a result of the civil discovery process, however, do not fall within the scope of the constitutional right of access's compelling interest standard.
>
> …
>
> In certain narrow circumstances, the common-law right of access demands heightened scrutiny of a court's decision to conceal records from the public and the media. Where the trial court conceals the record of an entire case, making no distinction between those documents that are sensitive or privileged and those that are not, it must be shown that the denial [of access] is necessitated by a compelling governmental interest, and is narrowly tailored to that interest. This heightened scrutiny is necessitated by the fact that the entire civil cases otherwise open to the public are erased as if they never occurred.

*Chicago Tribune*, 263 F.3d at 1310-11 (internal quotations and citations omitted). Because we are dealing with neither a criminal case nor a civil action pertaining to the release or incarceration of prisoners and their confinement, we will analyze the various documents Petitioners seek to seal using the six-factor balancing test discussed above.

Nevertheless, we will deny the Motion, as we do not find good cause to seal any item based on Petitioners' arguments about the confidentiality of that information. A review of each item flatly contradicts Petitioners' assertion that the information must be protected because it contains "proprietary trade secret information" in the form of "algorithms and other technical information, sensitive cost calculations, and financial

information relating to the Third Set of Locks for the Panama Canal." [D.E. 42, p. 5]. No such information can be found anywhere in the exhibits at issue, and each merely references the database system in broad, general terms. Thus, there is no threat of release of the actual proprietary information, and so there can be no finding of good cause that Petitioners' confidential trade secrets would be disseminated absent a seal. *Chicago Tribune Co.*, 263 F.3d at 1314 (finding that prior to determining whether "good cause" to protect information exists, a court must first find that the items do, in fact, contain trade secrets).

Indeed, our review of the exhibits Petitioners ask us to protect lends support to our decision. In one item, Petitioners seek to seal "references to Respondent's expert Mr. Jeff Fuchs' testimony concerning the [management database]" found in the Final Arbitration Award. Those paragraphs discuss, in detail, Respondent's attempts to arrange for its expert to access Petitioners' system and a series of e-mails between the parties discussing Claimant's position on that matter. The paragraphs at issue do not contain anything approaching what could be considered proprietary information; they do not even *reference* a specific trade secret. Instead, the items at issue involve mundane, procedural findings made by the Tribunal concerning what amounts to a discovery dispute between the parties. Upon our review of the items, we find that the public disclosure of the information contained in these paragraphs would in no way threaten Petitioners with the dissemination of closely-guarded secrets.[2]

---

[2] In another example, Petitioners request to seal "Procedural Order No. 9" of the arbitral tribunal because it allegedly "discussed [the database] on page 4." [D.E. 42, p. 4]. The "discussion" about the management database instead simply details

6

A party arguing that a document should be sealed because it contains trade secret information must show that the information meets the commonly accepted criteria of trade secrets, including that the party consistently treated the documents as closely guarded secrets, the information represents substantial value to the party, the information is valuable to the party's competitors, and it derives its value by the virtue of the effort of its creation and lack of dissemination. *Chicago Tribune Co.*, 263 F.3d at 1313-14. Petitioners fail in this regard. There are no explanations, affidavits, or privilege logs supporting its conclusory statements that the information is proprietary, and the record completely undermines the argument that the exhibits contain "algorithms and other technical information, sensitive cost calculations and financial information" related to the Panama Canal project. The conclusory statements notwithstanding, Petitioners fail to sufficiently explain what the claimed proprietary information is or why measures other than sealing will not sufficiently protect it. In short, Petitioners fail to establish good cause for the sealing of the first category of documents.

This also holds true for the second category of documents, which pertain to "the amounts in dispute and the legal fees incurred in the arbitration." [D.E. 42, p. 6]. Petitioners go through the trouble of discussing the six factors that are used to

---

Respondent's attempts to access the database, Petitioners' argument against doing so, and the Tribunal's decision to deny what would amount to a fourth "bite at the apple" for the expert in question. Once again, Petitioners ask us to seal what amounts to a rote discovery dispute concerning an expert's access to certain information, without any actual trade secret being discussed.

determine whether good cause supports sealing of the items in dispute, yet they offer nothing beyond conclusory assertions about why those items should be precluded from public disclosure.[3] The record does not provide any support that would allow us to determine whether these claims are accurate or simply an attempt to avoid embarrassment about the figures in dispute and the total cost overruns of the project. We agree with Respondent that such a justification would be insufficient to support a request to seal. *See Wilson v. American Motors Corp.*, 759 F.2d 1568, 1570-71 (11th Cir. 1985) (finding that "simply showing that the information would harm the company's reputation is not sufficient to overcome the strong common law presumption in favor of public access.") (citing *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1179 (6th Cir. 1983)).[4]

In sum, we find that Petitioners failed to meet their burden in showing that their interests in keeping the information confidential outweighs the general right to access. *Chicago Tribune*, 263 F.3d at 1309. We therefore find no good cause as to why the information and exhibits should be sealed.

---

[3] *See* D.E. 42, p. 6 (claiming that publication of the alleged amounts in dispute would "lead to further aggravation of the pending disputes"); p. 6 (broadly asserting that the fees the parties incurred in the arbitration could be "used for tactical advantage unrelated to the Court's resolution" because "the final price of the Project is the subject of ongoing arbitrations"); p. 8 (contending that disclosure of the financial information "will cause competitive harm and place [Petitioners'] shareholders at a strategic disadvantage when bidding for contracts in the future.").

[4] In addition, Respondent has referred to evidence that the amount in dispute is and has been released into the public domain, citing to several news articles that discuss the arbitration and the parties' position on same. *See* D.E. 46, pp. 9-10.

8

### III. CONCLUSION

For the foregoing reasons, Petitioners' Motion is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 29th day of August, 2018.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge